**MADISON SILOS, DIVISION OF MARTIN MARIETTA CORPORATION,**
Appellant,

v.

Merritt WASSOM, Appellee.

**Merritt WASSOM, Plaintiff on Cross-Petition-Appellee,**

v.

**MADISON SILOS, DIVISION OF MARTIN MARIETTA CORPORATION, Defendant on Cross-Petition-Appellant.**

No. 56021.

Supreme Court of Iowa.

Feb. 20, 1974.

Johnson, Burnquist, Erb, Latham & Gibb, by Dale A. Johnson, Fort Dodge, for appellant.

Thomas L. McCullough, Sac City, for appellee.

Heard before MOORE, C. J., and RAWLINGS, LeGRAND, REES and REYNOLDSON, JJ.

RAWLINGS, Justice.

Action by plaintiff, Madison Silos, Division of Martin Marietta Corporation (Madison) for balance claimed due on contract. Cross-petition by defendant, Merritt Wassom (Wassom) for damages resulting from fall of plaintiff built silo. Plaintiff appeals from judgment on jury verdict for defendant cross-petitioner. We affirm.

March 21, 1969, the parties hereto entered into a contract for construction of a Nutri-Matic (sealed stave) silo by Madison on Wassom's Sac County farm. It was built that summer.

July 14, 1970, a severe windstorm swept through Sac County causing the silo to fall. It was thereby demolished and other structures and personalty on Wassom's farm attendantly damaged.

December 1, 1970, Madison commenced an action against Wassom for balance claimed due on the silo purchase price.

March 5, 1971, Wassom answered and cross-petitioned for $9999 damages based on breach of implied warranty for a particular purpose; breach of implied warranty of merchantability; and negligent construction.

March 18, 1971, Madison filed reply and answer to the above cross-petition.

April 26, 1971, Madison submitted an interrogatory asking that Wassom detail damages claimed as the result of the silo fall.

July 23, 1971, Wassom filed an itemized answer disclosing $96,985 total damages claimed.

June 6, 1972, trial commenced. Immediately after the jury had been empaneled Wassom submitted an amendment to his cross-petition thereby increasing damages sought from $9999 to $96,985.

Madison orally contended the amendment (1) was not timely; (2) sought consequential and incidental damages not previously pled; and (3) if allowed would be prejudicial to plaintiff.

At the same time Madison requested a continuance based on unavailability of a structural engineer witness essential to Madison's cause in the event Wassom should be allowed to so amend.

In opposing Madison's continuance motion Wassom asserted his interrogatory answer clearly advised Madison regarding actual damages sought; at considerable expense to Wassom he had arranged for trial presence of two engineer witnesses; Madison's attorney had previously asked Wassom's counsel about a continuance due to unavailability of a witness to which said counsel agreed providing another case be advanced for trial but apparently this was

not done. Wassom's attorney further stated, "If counsel wants to make a motion in proper form setting forth what his witness would say if he were called depending upon the form of the motion I probably would confess the motion as to what the witness would say."

Trial court permitted Wassom's amendment and denied Madison's motion for continuance.

At close of all evidence Madison unsuccessfully moved to strike from jury consideration the warranty of fitness issue and all evidence regarding incidental or consequential damages sought.

The jury awarded $73,485.25 to cross-petitioner Wassom, later reduced to $71,985 by trial court.

In support of a reversal Madison here contends trial court erred in (1) permitting Wassom to amend his cross-petition; (2) denying Madison's motion for a continuance; (3) submitting to jury the implied warranty of fitness for a particular purpose issue; (4) giving an instruction which failed to distinguish direct and consequential damages sought by Wassom; and (5) failing to grant a remittitur because the jury award was without adequate evidential support, and excessive.

■ I. First to be considered is Wassom's motion to dismiss this appeal. In support thereof it is claimed Madison's brief fails to comply with Iowa Rules Civ. Proc., Rule 344(a)(4) (First), The Code, 1971. As instantly applied that rule provided, in essence, appellant's opening brief shall contain, in separately numbered divisions, a statement of error relied on *with reference to record pages and lines showing how the error arose*. But see revised Iowa Rules Civ.Proc., rule 344(a)(1-5), The Code 1973.

Briefly stated, we find no plausible basis upon which to grant the drastic relief instantly sought by cross-petitioner Wassom.

On the other hand it should be understood that only by close adherence to applicable rules of appellate procedure may counsel avoid what could be time-consuming, costly or even disastrous results.

II. As aforesaid Madison claims trial court erroneously permitted Wassom to amend his cross-petition by substantially increasing the ad damnum after selection of the jury.

Iowa Rules Civ.Proc., rule 88 has at all times concerned stated and now provides:

"Any pleading may be amended before a pleading has been filed responding to it. The court, in furtherance of justice, may allow later amendments, including those to conform to the proof and which do not substantially change the claim or defense. The court may impose terms, or grant a continuance with or without terms, as a condition of such allowance."

Thus our prior opinions relating to the above rule are applicable.

■ In that respect we have repeatedly held trial courts have broad discretion as to permitting or denying amendments and unless that discretion is clearly abused this court will not interfere; allowance of amendments is the rule not the exception; but those offered after responsive pleadings have been filed should not be permitted if they materially change the issues. See e. g., Smith v. Village Enterprises, Inc., 208 N.W.2d 35, 37 (Iowa 1973); Twin Bridges Truck City, Inc. v. Halling, 205 N.W.2d 736, 739 (Iowa 1973); Stom v. City of Council Bluffs, 189 N.W.2d 522, 529–530 (Iowa 1971).

■ As previously indicated Madison maintains Wassom originally sought redress related only to the silo fall and his damage increasing amendment served, in effect, to inject new issues into the case because consequential or indirect damages were thereby also sought. We are not so persuaded.

By his original cross-petition Wassom alleged, inter alia, (1) Madison so negligently constructed the silo that it was de-

fective and would not withstand ordinary winds; and (2) Madison breached an implied warranty of fitness for a particular purpose. Although relatively nominal lump sum damages were thereupon prayed, it still remains direct and consequential or incidental damages were thereby sought. See generally 22 Am.Jur.2d, Damages, § 83; 25 C.J.S. Damages § 25; The Code 1971, §§ 554.2714, 554.2715.

Additionally, Wassom's answer to Madison's interrogatory, given almost one year before trial began, reveals both parties hereto were then aware of the increase in damages claimed by Wassom. Although the delay in amending his cross-petition is not approved it is evident Madison was not caught by surprise. Furthermore, Madison has shown no prejudice flowing from trial court's allowance of Wassom's amendment.

We find no requisite cause to reverse on this assignment. See Townsend v. Mid-America Pipeline Company, 168 N.W.2d 30, 37 (Iowa 1969); Kaltenheuser v. Sesker, 255 Iowa 110, 112–113, 121 N.W.2d 672 (1963); 22 Am.Jur.2d, Damages, § 276; 71 C.J.S. Pleading § 293.

III. The question now posed is whether prejudicial error inheres in the overruling of Madison's motion for a continuance, orally voiced after Wassom had been granted leave to amend as aforesaid.

On this subject Iowa Rules Civ.Proc., rule 183 comes into play. It provides:

"(a) A continuance may be allowed for any cause not growing out of the fault or negligence of the applicant, which satisfies the court that substantial justice will be more nearly obtained. It shall be allowed if all parties so agree and the court approves.

"(b) All such motions based on absence of evidence must be supported by affidavit of the party, his agent or attorney, and must show: (1) The name and residence of the absent witness, or, if unknown, that affiant has used diligence to ascertain them; (2) what efforts, constituting due diligence, have been made to obtain such witness or his testimony, and facts showing reasonable grounds to believe the testimony will be procured by the next term; (3) what particular facts, distinct from legal conclusions, affiant believes the witness will prove, and that he believes them to be true and knows of no other witness by whom they can be fully proved. If the court finds such motion sufficient, the adverse party may avoid the continuance by admitting that the witness if present, would testify to the facts therein stated, as the evidence of such witness."

■ Here again trial courts are accorded broad discretion and absent clearly shown abuse thereof we will not interfere. See State v. Cowman, 212 N.W.2d 420, 423 (Iowa 1973); In Re Estate of Tomin, 260 Iowa 1129, 1132, 152 N.W.2d 286 (1967); 17 Am.Jur.2d Continuance, § 3; 17 C.J.S. Continuances § 5.

At the outset Madison's motion does not, either in form or substance, meet the requirements of rule 183(b), quoted above. Although this may have been due to attendant circumstances it still remains Madison never attempted to correct the situation by a professional statement. See Cogley v. HyVee Food Stores, Inc., 257 Iowa 1381, 1386–1387, 137 N.W.2d 310 (1965). Neither was any effort made to secure a trial recess to permit the preparation and filing of a formal motion in accord with the above identified rule.

Rather, Madison elected to stand upon this motion as made:

"I would also like to make a motion for a continuance based on the amendment on cross-petition for the reason that the defendant on cross-petition had earlier arranged to have a witness who is a structural engineer testify. He was not able to testify at this trial because of a prior commitment in the State of Michigan, and based on damages in the amount of $9,999.00 it was felt that his testimony was not absolutely necessary. The fact the damages have been increased to the amount of $96,985.00 I

feel this witness is now absolutely necessary for a fair and impartial trial in this matter, and if the court grants the amendment to cross-petition the defendant on cross-petition desires to have this matter continued to a later date."

Without question the foregoing fails to identify the absent witness; makes no reference to his qualifications or competency; provides no means by which to determine whether the unidentified person would have been later available had a continuance been granted; omits any statement as to the substance or materiality of any evidence which would be elicited from the claimed witness were he to testify; and permits no determination as to whether the same evidence was or was not supplied by other experts later called by Madison. See State v. One Certain Automobile, 237 Iowa 1024, 1026–1028, 23 N.W.2d 847 (1946); 17 Am.Jur.2d, Continuance, §§ 8–9; 17 C.J.S. Continuances §§ 46, 48–49, 51–52.

■ Here again we take note of the fact that Wassom's pretrial answer to Madison's interrogatory specified the damages sought by the aforesaid amendment. In that regard 17 C.J.S. Continuances, § 73, at 455 aptly states:

"[T]he filing of an amendment is not matter of surprise warranting a continuance where it merely sets forth in more detail the matters alleged in the original pleading, or states such matters in a different manner, or where the matter set up in the amended pleading is identical with that disclosed by the affidavit which accompanied the original declaration, or by the bill of particulars, *or by answers to applicant's interrogatories.*" (Emphasis supplied).

Moreover, as heretofore revealed, Wassom's attorney invited Madison's counsel to divulge the substance of testimony which would be given by the absent witness so that a testimonial stipulation as to same might be agreed upon. No such information was ever supplied. See rule 183(b) quoted above; cf. Cogley v. HyVee Food

Stores, Inc., supra; State v. McClain, 256 Iowa 175, 188, 125 N.W.2d 764 (1964); Gaynor v. Magoun, 229 Iowa 134, 135–140, 294 N.W. 256 (1940); Flood v. City Nat. Bank, 220 Iowa 935, 946, 263 N.W. 321 (1935), cert. denied 298 U.S. 666, 56 S.Ct. 749, 80 L.Ed. 1390 (1936).

Finally, the record discloses two expert witnesses did testify on Madison's behalf.

■ Under the circumstances we find no abuse of discretion by trial court in overruling Madison's motion for a continuance.

IV. Proceeding now to matters in course of trial, Madison asserts no jury instruction on implied warranty of fitness for a particular purpose should have been given.

Basically, Madison thus challenges sufficiency of the evidence to support that issue.

It is essential we look first to relevant statutes in our 1971 Code.

Section 554.2314 provides, in part:

"1. Unless excluded or modified (section 554.2316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."

And § 554.2315 states:

"Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

Then, regarding these two warranties this is, in material part, the Uniform Commercial Code Comment to § 2–315, 35 Iowa Code Annotated, at 333:

"2. A 'particular purpose' differs from the ordinary purpose for which the

goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question."

To the same effect is our holding in Peters v. Lyons, 168 N.W.2d 759, 763 (Iowa 1969).

It is also understood both of the aforesaid warranties may be invoked and apply in the same case. See 1 Anderson, Uniform Commercial Code, § 2–314:60.

Explanatively, *id.,* § 2–315:6 states:

"Because of their distinctive characteristics the implied warranties of merchantability and of fitness for a particular purpose are not mutually exclusive so that the fact that one exists does not exclude the other. There may, however, be a factual inconsistency between the content of the two warranties in a given case. If this is so, there is a question of fact as to what was to be the seller's obligation, and any doubt is resolved in favor of the warranty of fitness for a particular purpose, unless the buyer furnished specifications to the seller.

"Ordinarily, however, no such question arises for when the seller is a merchant and the facts so warrant there may be both an implied warranty of merchantability by the merchant seller and a warranty of fitness for a particular purpose. And in any case it is unnecessary to determine whether a seller is liable for breach of warranty for a particular purpose when there is a breach of warranty of merchantability arising under UCC § 2–314."

■ In order to establish a fact issue as to implied warranty of fitness for a particular purpose the burden was, of course, upon Wassom to show he relied on Madison's skill or judgment to select or furnish a suitable silo; at time of contracting

Madison had reason to know Wassom's purpose; and he relied on Madison's skill or judgment. See 1 Anderson, Uniform Commercial Code, § 2–315:4.

■ But in determining whether such burden has been met we consider only the evidence favorable to Wassom, whether or not contradicted. See Andrews v. Struble, 178 N.W.2d 391, 397 (Iowa 1970).

When so viewed the record amply discloses a fact issue was created as to breach of warranty for a particular purpose. Demonstrably Wassom testified:

"When I purchased this silo from the Madison Silo Company of Martin Marietta, I did discuss with the salesman that I signed the contract with the need for silos that would hold or contain wet grain. When I bought the silo, I relied upon these people in furnishing a silo that would be reasonably suitable for the purpose to be used."

There is also testimony disclosing ground shelled corn placed in the Nutri-Matic silo in the fall of 1969 was found to have spoiled when removed that winter, and if the silo had been sealed properly such spoilage would not have occurred.

■ Consequently, it was not error to instruct on the implied warranty of fitness for a particular purpose issue. See Iowa Rules Civ.Proc., rule 344(f)(17).

V. By the next previously mentioned assignment of error Madison asserts instruction 18 was erroneous because no distinction was thereby made between direct damages caused by any defect in the silo and those consequential in nature.

Although the instructions given are not a model of clarity neither does Madison's objection to instruction 18 measure up to that standard.

Iowa Rules Civ.Proc., rule 196, says in pertinent part:

"[A]ll objections to giving or failing to give any instruction must be made in

writing or dictated into the record, out of the jury's presence, specifying the matter objected to and on what grounds. No other grounds or objections shall be asserted thereafter, or considered on appeal."

■ This means an objecting party must point out wherein he contends an instruction is erroneous with such specificity that a trial court be alerted thereto and have opportunity to effect a correction before submission of same to the jury. See Cole v. Laucamp, 213 N.W.2d 532 (Iowa, opinion filed December 19, 1973); Wiles v. Myerly, 210 N.W.2d 619, 630 (Iowa 1973).

As best we can determine Madison's trial objection to instruction 18 was that there should have been a definitive line of demarcation between the two types of damages involved, i. e., direct and consequential.

Noticeably, nothing in the above objection can be said to have alerted trial court to any claim that this was not a proper case for allowance of consequential damages attendant upon breach of implied warranty for a particular purpose. If such had been Madison's intent and purpose it could easily have so declared.

Neither was any such contention voiced by Madison in support of its motions at close of all testimony.

Our review will therefore be confined to the assignment of error as here made.

■ At the threshold it stands without question all jury instructions given must be read and construed together, not piecemeal or in artificial isolation. See e. g., McCarthy v. J. P. Cullen & Son Corp., 199 N.W.2d 362, 368 (Iowa 1972). See also Cupp v. Naughten, 414 U.S. 141, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973).

By instruction 16 the jury was told, in substance, the burden was upon defendant Wassom to prove by a preponderance of evidence breach of implied warranty, if any, was a direct and proximate cause of the silo collapse and resulting damages. Proximate cause is also defined.

And instruction 18 inceptionally states:

*"If you find for defendant on his counterclaim, then* he will be entitled to the reasonable value of the Nutri-Matic silo, in this vicinity, just before and after it was damaged, if the silo could not be repaired at reasonable cost, less salvage (base and unloader) and less the unpaid balance due on the silo but not exceeding the sum of $15,000.00 which was the amount asked." (Emphasis supplied).

This is to us a specification of direct damage. Any further definition thereof was unnecessary.

Subsequently, in the same instruction, trial court proceeded to list, item by item, with limitations on amount of recovery, the consequential damages allowable, if any. Here again no additional definitive statement was required.

■ Admittedly the prefatory portion of instruction 18, italicized above, is not repeated in each subparagraph thereof dealing with the aforesaid itemized consequential damages. Madison urges such omission constitutes error necessitating a reversal. Stated otherwise, it takes the position, absence of the above italicized words in each subparagraph created an assumption Wassom was to be allowed recovery. We disagree.

First, there was clearly no occasion for the jury to proceed with any measurement of damages unless the foundational findings were for Wassom. In that respect prior instructions adequately dealt with burden of proof and evidence essential to recovery. See Tretter v. Chicago & G. W. Ry. Co., 147 Iowa 375, 378–379, 126 N.W. 339 (1910).

Furthermore, instruction 18 closes with these all embracive qualifying admonitions:

"The damages, if you award any, must be left to your sound discretion, which is not to be exercised arbitrarily or hastily, but wisely and fairly and after impartially considering the evidence.

"You can only allow such damages, if any, directly resulting from the defect in the silo, such as would reasonably be within the contemplation of the parties in the event of such a defect.

"As I have said before defendant must prove his damages by a preponderance of the evidence, as well as his other propositions, or he can have nothing."

Subsequently, by instructions 19, 20 and 21, no one of which was ever challenged, trial court dealt with the negligence issue invoked by Wassom as previously noted.

In this regard there is evidence to the effect Madison's construction employees were able to affix only about one-third of the rods by which the structure would be anchored to the concrete base, and bands designed to hold the silo staves in position were not properly tightened.

Also, as to negligence, instruction 23 states, in part: "I have heretofore instructed you with reference to defendant's damages and those instructions are applicable here as though set forth verbatim."

Here again the record reveals no objection was ever directed to instruction 23.

Madison's assault upon instruction 18 is devoid of substance.

VI. Is the verdict without evidential support, or excessive?

By its related motion for a new trial Madison alleged:

"The verdict is excessive and greater than the prayer in that loss of major source of income in the amount of $25,000.00 was not permitted, leaving a balance of $71,985.00. The jury returned its verdict in the total sum of $73,425.00. The prayer was not amended to include damages in any amount greater than $71,985.00 and thus the Court erred in submitting to the jury damages in an amount greater than prayed. Cross-Petitioner prayed damages in the amount of $3,350.00 for buildings damaged or destroyed, yet the Court instructed the jury that they could award up to $7,350.00 for damages to buildings."

In ruling thereon trial court said:

"The claim that the verdict is excessive is not sustained by the evidence except in one particular. Mr. Wassom in the prayer of his Cross-Petition, claimed total damages in the sum of $96,985.00. Part of the prayer was a claim for loss of profits in the sum of $25,000.00, which claim was withdrawn from the jury, leaving a maximum allowable prayer of $71,985.00. The verdict was for $73,485.25 and this amount must be reduced by $1,500.25. The Court feels the verdict in this amount must stand. Both parties had a fair trial."

In light of trial court's corrective action Madison has no viable cause for complaint regarding any mathematical computation.

 Furthermore, in considering Madison's excessiveness claim the evidence is viewed by us in the light most favorable to Wassom. Weight is also accorded the fact that trial court, having seen and heard the witnesses, and being aware of all trial incidents did not find the verdict inordinate. See Wiles v. Myerly, 210 N.W.2d at 632.

 As reduced by trial court the verdict neither awards damages having no reasonable support in the record, nor is it excessive.

Affirmed.