**Catherine A. RAGAN, Plaintiff–Appellee,**

v.

**Brent A. PETERSEN and August B. Petersen, Defendants–Appellants.**

**No. 95–1441.**

Court of Appeals of Iowa.

June 26, 1997.

Thomas J. Shields and Theodore F. Olt, III of Lane & Waterman, Davenport, for defendants-appellants.

Michael K. Bush of Carlin, Hellstrom & Bittner, Davenport, for plaintiff-appellee.

Heard by HABHAB, C.J., and SACKETT, and CADY, JJ., but decided en banc.

CADY, Judge.

This single issue we face in this appeal is whether the district court abused its discretion by refusing to grant a motion for continuance of trial. We conclude the district court abused its discretion. We reverse and remand for a new trial.

Catherine Ragan instituted this action against Brent Petersen and August Petersen on July 7, 1993, for personal injuries arising from an accident on July 11, 1991. Ragan was struck by a grain auger which broke loose from a grain truck operated by Brent Petersen. Ragan was primarily represented by attorney James T. Carlin from Davenport. The Petersens were represented by attorney Steven E. Mayer from Clinton. Trial was scheduled for January 9, 1995.

Ragan moved for a continuance of trial on December 20, 1994. The motion claimed Vernon Varner, M.D., a neuropsychiatrist, had recently examined Ragan and believed she suffered a previously undiagnosed

closed-head injury as a result of the accident. The motion explained Dr. Varner had scheduled additional tests, including a complete neuropsychological evaluation for January 6, 1995. The motion further explained the nature and extent of Ragan's previously undiagnosed and untreated head injury would not be known until Dr. Varner completed his neuropsychological evaluation. The motion claimed Ragan would be prejudiced if required to go to trial before Dr. Varner's evaluation was completed.

The trial court granted the motion and rescheduled the trial for June 5, 1995. Mayer did not resist the motion.

On January 18, 1995, Mayer wrote Carlin indicating he may want to obtain an independent medical evaluation of Ragan, and requested Carlin to voluntarily produce Dr. Varner's records. Carlin promptly responded, indicating he would voluntarily produce the requested information. Carlin explained he had requested the records from Dr. Varner and would provide them to Mayer after he received them from Dr. Varner.

On February 27, 1995, Mayer wrote Carlin indicating he had not received the requested records. He asked Carlin to produce all Dr. Varner's records even if Dr. Varner had not yet prepared a written report. He also requested to arrange for the deposition of Dr. Varner. Mayer followed this letter with another letter on March 10, 1995, again indicating the records had not been received.

Carlin responded to the March 10, 1995 letter on March 13, 1995. He informed Mayer no records had been received from Dr. Varner despite his requests. Carlin also indicated Ragan was scheduled to see Dr. Varner on March 27, 1995. Carlin expressed his belief Dr. Varner would be in a position to provide the records and a report following the March 27 examination of Ragan. Mayer responded he would not wait any longer, and would be seeking the records by court action. This, however, was never done.

Carlin forwarded the requested records and report by Dr. Varner to Mayer on April 28, 1995. The report was dated April 24, 1995. Dr. Varner's deposition was taken on May 9, 1995.

On May 19, 1995, Mayer filed a motion to continue the trial scheduled for June 5, 1995. He believed an independent medical examination was needed and there was insufficient time before trial for it to be completed. He alleged the Petersens would be seriously prejudiced if required to proceed to trial without independent discovery.

The district court denied the motion. It faulted Mayer for putting off the decision to seek an independent medical examination until the results and opinions of Dr. Varner's evaluation had been discovered. The court determined a further continuance was not warranted because Mayer should have employed his own medical expert independent of the opinions of Dr. Varner after Carlin told him in December 1994 that Dr. Varner believed Ragan had suffered a closed-head injury. The court also observed Mayer could have used a subpoena to obtain any records he needed. The district court did not specifically consider the impact of any prejudice to the Petersens of proceeding to trial without an independent evaluation, but indicated the case was beyond the Supreme Court standards for the processing of a civil case. It further observed Mayer had failed to identify a medical expert to conduct an independent examination.

The case proceeded to trial on June 5, 1995. The Petersens renewed their motion for a continuance, which the trial court summarily denied. The Petersens acknowledged liability. They introduced no medical testimony. The jury returned a verdict for Ragan of $1,108,907. The district court denied the Petersens' motion for a new trial based in part on the failure to continue the trial.

The Petersens appeal. They claim the trial court abused its discretion by failing to continue the trial. Ragan asserts the trial court acted within its discretion in denying the continuance, and error was not preserved because the Petersens failed to articulate facts to establish prejudice.

### I. *Motion for Continuance.*

■ The decision to grant or deny a continuance of trial rests within the discretion of the trial court. *Hawkeye Bank &*

*Trust v. Baugh,* 463 N.W.2d 22, 26 (Iowa 1990). We will reverse only when that discretion is abused. *Id.*

The trial court is given guidelines to help exercise its discretion when presented with a motion for continuance, which we in turn use to measure the reasonableness of the trial court's decision. *Id.* These guidelines provide "a continuance may be allowed for any cause not growing out of the fault or negligence of the applicant, which satisfies the court that substantial justice will be more nearly obtained." Iowa R. Civ. P. 183(a). Thus, when a motion for continuance is promptly filed, "alleging a cause not stemming from the movant's own fault or negligence, the court must determine whether substantial justice will be more nearly obtained by granting the request." *State v. Birkestrand,* 239 N.W.2d 353, 360 (Iowa 1976).

We first examine the conduct of defense counsel in failing to seek an independent medical examination prior to receiving Dr. Varner's evaluation, and in failing to utilize the power of the court to obtain the requested medical records of Dr. Varner. The trial court found this conduct was the cause for the requested continuance, which was the fault of defense counsel.

We do not believe a defense attorney's decision to delay a request for an independent medical examination until the plaintiff's medical information on the particular injury has been disclosed constitutes negligence or fault for the purposes of determining whether to grant a continuance. An independent medical examination is not available as a matter of right, but is permitted only within the discretion of the trial court. *McQuillen v. City of Sioux City,* 306 N.W.2d 789, 790 (Iowa 1981). It is granted only when the mental or physical condition of the party is in controversy, and good cause is shown for the examination. *Id.* at 790–91; Iowa R. Civ. P. 132. Moreover, these two requirements are not simply formalities and are not satisfied by mere conclusory allega-

tions or by mere relevance to the case. *Schlagenhauf v. Holder,* 379 U.S. 104, 118, 85 S.Ct. 234, 243, 13 L.Ed.2d 152, 163–64 (1964).

In some instances, a pleading may form a sufficient basis to satisfy the requirements of Rule 132. *See Curtis v. Express, Inc.,* 868 F.Supp. 467, 468 (N.D.N.Y.1994). In this case, however, the only basis for seeking an independent medical evaluation in the four months following the continuance was the conclusory allegation in Ragan's motion for continuance that Dr. Varner's initial evaluation "indicated the presence" of a closed-head injury. Carlin acknowledged Dr. Varner's preliminary evaluation was incomplete and the "nature and extent" of Ragan's injuries were unknown and would not be known until the evaluation was complete. Moreover, no medical evidence was produced during this period of time to substantiate this claim and no pleadings or interrogatories were amended to place the condition squarely in issue until May 1, 1995.

Under these circumstances, we have doubts whether Mayer would have been entitled to obtain an independent medical evaluation before Dr. Varner's evaluation was complete. The only ground for an independent medical examination was a preliminary, incomplete claim. Even if good cause was present to support a request for an independent medical examination prior to the completion of a plaintiff's medical evaluation, we cannot conclude it would be imprudent to delay requesting an independent examination until the plaintiff identified the nature and extent of the injuries claimed. There are a multitude of reasons to postpone the decision to request an independent medical examination until the plaintiff's own evaluation is complete, most fundamentally that an independent examination may not be necessary.

We also decline to find fault because Mayer failed to resort to the court process to obtain the medical information prior to the time this information was voluntarily disclosed.[1] Our rules of trial procedure require

1. Records and documents are subject to production under Iowa Rule of Civil Procedure 129 and 130. They may also be sought in conjunction with a deposition or written interrogatories, as well as by subpoena. *See* Iowa R. Civ. P. 140, 155. Some of the medical information in this case, however, may not have been discoverable. *See* Iowa Code § 228.9 (1995).

counsel to make a good faith effort to resolve discovery disputes prior to seeking assistance from the court. *See* Iowa R. Civ. P. 122(e). The discovery process is intended to be self-executing. Here, the parties had no real legal dispute over discovery which required court action. Instead, the basic problem was the information subject to discovery was not available for production.

We also consider the concepts of civility and professionalism, which have become increasingly important ingredients of modern-day advocacy. *See Vlotho v. Hardin County,* 509 N.W.2d 350, 353 (Iowa 1993). These concepts permit attorneys to accede to reasonable requests and encourage courtesy in interacting with opposing counsel. *See* DR 7–101(1).

Mayer was attempting to obtain the information he needed in a manner consistent with these precepts. We recognize there are many different approaches to the practices of law, and no one approach is necessarily better, or more successful, than another. Attorneys, however, have a choice, and should not be faulted for following one approach over another. *See* Mark S. Cady, *Advocating Personal Values in Advocacy,* 52 The Iowa Lawyer, May 1991, at 8. In this case, Mayer chose to rely on Carlin's repeated assurances the requested information and final evaluation would be forthcoming.[2] It was proper for Mayer to rely on these assurances, and he should not be faulted for not pursuing more aggressive tactics.

We conclude the grounds for the continuance filed by Mayer did not stem from the movant's fault. Thus, the pivotal question turns to whether substantial justice would have been more nearly obtained by granting a continuance. In denying the continuance, the trial court indicated the case had been pending longer than the time standards promulgated by our Supreme Court,[3] and further pointed out Mayer neglected to identify a medical expert who could rebut Dr. Varner's testimony. Ragan argues the failure to identify an expert to rebut the testimony of Dr. Varner or to make an offer of proof that would have rebutted the testimony of Dr. Varner, precludes the Petersens from establishing prejudice based on the denial of a continuance.

We acknowledge trial courts have an obligation to the administration of justice, and should strive to move a case to its conclusion within a reasonable period of time. The case processing standard emphasizes this important obligation. These standards are not, however, mandatory, but are an aid to use in making decisions affecting the proceedings. Supreme Court Time Standards for Case Processing, effective October 1, 1985. Thus, they must not be applied in a mechanical fashion, detached from the overall notion of justice. While timely case processing is an important aspect of justice, the paramount obligation of a court is to insure the process is fair and just.

The concept of "substantial justice" favors a trial which allows both parties an opportunity to fully and fairly develop their claims and defenses without prejudice to the other party. In this case, the time standards were not met because Ragan alleged additional serious injuries on the eve of the first trial date and needed additional time to discover the nature and extent of those injuries. The Petersens did nothing to contribute to this delay. This additional discovery then took over four months, leaving the Petersens with less than a month to prepare a response. An additional continuance to permit the Petersens to obtain an independent medical examination in response to Dr. Varner's final evaluation and opinions would have caused little, if any, prejudice to Ragan and would have been consistent with the concept of fairness. Moreover, the resulting prejudice of forcing the Petersens to proceed to trial without any responsive medical testimony or an independent medical evaluation of Ragan's medical testimony is obvious, and

---

2. We do not imply attorney Carlin acted improperly. To the contrary, it appears he acted in a professional manner in his efforts to obtain the information requested by Mayer. *See* DR 7–101(1). The problem was Dr. Varner did not complete the evaluation until April 24, 1995.

3. The Supreme Court standards for case processing declare a civil jury case should take eighteen months from filing to disposition.

overwhelming. It chills the notions of fair play and substantial justice.

We view the issue of prejudice in a pragmatic fashion when considering whether substantial justice would be more nearly achieved by granting a continuance of trial. Thus, a movant seeking a continuance under the circumstances of this case should not be required to additionally establish an independent medical examination would have produced beneficial results at trial. The unfairness lies in the denial of the opportunity itself.

We conclude the district court erred in failing to grant the motion for continuance of trial. We reverse and remand for a new trial.

**REVERSED AND REMANDED.**

All judges concur except SACKETT, and VOGEL, JJ. who specially concur, and STREIT, J., who dissents.

SACKETT, Judge (concurring specially).

I concur with the majority in all respects. I write specially to further clarify my position. This case is far broader than a question of a continuance. It goes to the heart of the court's responsibility to maintain and encourage civility and reasonable behavior among lawyers.

It is disappointing that plaintiff imposed on defendant's forbearance in failing again and again to obtain and share the medical report plaintiff agreed to produce, and then saw fit to resist the motion for continuance defendant sought for an independent medical evaluation because plaintiff had not timely produced the report.

The dissent characterizes this case as our finding the trial court abused its discretion in denying a continuance in a case that had been pending for almost three years. The dissent also finds the trial court correctly considered the age of the case in refusing to grant the motion. I would have no problem accepting the dissent's position if the delay had been caused by the party seeking the continuance. It was not. The majority of the delay was caused by plaintiff.

One party to a lawsuit should not be allowed to obtain the other's cooperation and then throw that cooperation in their face. I recognize the need for efficient disposition of lawsuits, but the real question here is whether the result was just. I find it was not.

VOGEL, J., joins this special concurrence.

STREIT, J., dissents.

STREIT, Judge (dissenting).

I respectfully dissent. The majority holds the trial court abused its discretion in denying a motion to continue the trial of a case pending for almost three years. Iowa Rule of Civil Procedure 183(a) provides "[a] continuance may be allowed for any cause not growing out of the fault or negligence of the applicant, which satisfies the court that substantial justice will be more nearly obtained." *State v. Ware*, 338 N.W.2d 707, 714 (Iowa 1983). A ruling denying a motion for a continuance is discretionary and calls for reversal only upon a showing of abuse of discretion. *State v. Teeters*, 487 N.W.2d 346, 348 (Iowa 1992). A trial court has "very broad" discretion in ruling on a motion for a continuance. *State v. Sieren*, 253 Iowa 118, 121, 111 N.W.2d 249, 250 (1961). *State v. LaGrange*, 541 N.W.2d 562, 565 (Iowa App.1995). *Madison Silos, Division of Martin Marietta Corp. v. Wassom*, 215 N.W.2d 494, 498 (Iowa 1974).

We have held:

This court will not find an abuse of discretion unless "such discretion is exercised on grounds or for such reasons clearly untenable or to an extent clearly unreasonable." *Hutchinson v. Smith Labs., Inc.*, 392 N.W.2d 139, 141 (Iowa 1986) (citations omitted). This discretion is abused if it is clear the judge has applied an improper standard, failed to follow established legal rules, or has based the decision on a record devoid of facts to support the decision. (citations omitted). *Edson v. Chambers*, 519 N.W.2d 832, 834 (Iowa App.1994)

For us to find an abuse of discretion in a trial court's ruling, it must be shown by the complaining party the trial court's action was unreasonable under the attendant circumstances. *State v. Cott*, 283 N.W.2d 324, 329

(Iowa 1979). Discretionary rulings, such as the one here, are presumptively correct and complainant has a heavy burden to overcome the presumption of regularity. *Netteland v. Farm Bureau Life Ins. Co.*, 510 N.W.2d 162, 167 (Iowa App.1993). Ordinarily, an abuse is found to exist only where there is no support in the record for the trial judge's determination. *Rath v. Sholty*, 199 N.W.2d 333, 336 (Iowa 1972).

In this case, in light of the persuasive reasons for a continuance advanced by defendants, the question of whether a continuance should have been granted is close. The trial court would not have abused its discretion if it had allowed a continuance. On the other hand, under principles enunciated in our prior decisions, we should not say the trial court's denial of defendant's motion for a continuance was unreasonable under the attendant circumstances. *Michael v. Harrison County Rural Elec. Co-op.*, 292 N.W.2d 417, 419 (Iowa 1980). There is support in the record for the trial court's ruling.

In this case, plaintiff, on December 20, 1994, obtained a trial continuance based on discovery of a "significant closed head injury which was previously undiagnosed and untreated." The trial was set for June 5, 1995—almost three years after the filing of the case. Between December, 1994, and June, 1995, Ragan was examined and tested by Dr. Varner. Varner did not prepare a written report until April 24, 1995. Defendants' attorney received this report four days later. Defendants deposed Varner May 9th, 1995—almost a month before trial. Instead of arranging for an independent medical exam, defendants filed for a continuance. Defendants stated:

4.... Defendant will request that Plaintiff undergo independent medical evaluation and that there is insufficient time for such evaluation to be accomplished and to allow the parties to evaluate the results thereof based upon the present assignment for ... trial.

Defendants had almost five months since receiving information about the direction plaintiffs' case was proceeding, six weeks since receiving a written medical report, and four weeks since the deposition of Dr. Var-

ner, to arrange for an independent exam or to proffer a stratagem for discovery. They did not do this. The defendants did not take any of these opportunities to pursue discovery. At hearing on the motion, they did not offer any proposed medical examiners. The defendants did not say, "Judge, we've lined up a doctor to examine the plaintiff, but she can't complete her work before the trial." Instead, the trial court heard a fairly vague plea of not having enough time for an "evaluation to be accomplished and to allow the parties to evaluate the results." When confronted with this ambiguous request, the court weighed it against the whiskers on this case, the likelihood of getting a trial rescheduled, and justice being denied by the lethargic procession to the courtroom. Many times a court, when confronted with the caliber of the legal talent in this case, is looking at a scheduling window of up to a year away. This case was facing dismissal under Iowa Rule of Civil Procedure 215.1. The trial court, in ruling on the motion, considered the age of the case and the rather vague request for an independent exam.

The majority presumes unfair harm resulted from the denial of a continuance with the conclusion the prejudice of defendants' proceeding to trial without responsive medical testimony "is obvious, and catastrophic." With the defendants not proposing a specific doctor to perform the exam, it is speculative to estimate the prejudice from the denial of the motion. I agree with the majority's conclusion that a movant seeking a continuance should not have to establish the independent medical examination would have produced beneficial results at trial. However, the movant seeking a continuance should have a specific reason for asking for more time. More time to do what? Defendants did not offer a specific reason. The majority concludes the trial courts ruling "... chills the notions of fair play and substantial justice." The trial judge is in a better position for this pronouncement:

Many trial continuances are sought on legitimate grounds. In spite of careful plans and diligent preparations, an unanticipated event will on occasion necessarily precipitate a continuance motion. It is far

from unknown, on the other hand, for continuance motions to serve as a mere delaying tactic. We call upon our trial judges to do justice to those needing and deserving a continuance, while at the same time resolutely moving the trial assignment toward the speedy resolution of cases. The trial judge must sense whether a given continuance motion stems from a legitimate need, or from a wish to delay. From its closer vantage point, the trial court can better sort through these matters than an appellate court can.

*State v. Teeters,* 487 N.W.2d 346, 348 (Iowa 1992).

It is not for our court to point to the large verdict and conclude defendants obviously were deprived of a fair opportunity to prepare or present their case. Without defendants telling the trial court, with some specificity, the proposed avenue of further discovery, the trial court did not abuse its discretion in denying the continuance. This motion was close. There has not been a clear showing of an abuse of judicial discretion in the denial of the motion for a continuance of the trial. *Michael v. Harrison County Rural Elec. Co-op.,* 292 N.W.2d 417, 419–420 (Iowa 1980).