# IN THE SUPREME COURT OF IOWA

No. 69 / 06-0977

Filed October 5, 2007

**CITY OF MADRID, IOWA,** and **EMC INSURANCE COMPANIES,**

Appellants,

vs.

**ANGELA BLASNITZ,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Arthur E. Gamble, Judge.

Insurer seeks further review of court of appeals decision remanding workers' compensation case to commissioner for determination of insurer's liability for penalty benefits. **DECISION OF COURT OF APPEALS VACATED. DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED.**

Lori A. Brandau and Michael L. Mock of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellants.

Jim Lawyer of Lawyer, Lawyer, Dutton & Drake, LLP, West Des Moines, for appellee.

**TERNUS**, **Chief Justice**.

This appeal involves a workers' compensation insurer's challenge to an award of penalty benefits by the workers' compensation commissioner. The district court ruled the commissioner had applied an incorrect standard in determining the employer's liability for penalty benefits under Iowa Code section 86.13 (2003) and concluded the case should be remanded to the commissioner for reconsideration of penalty benefits under the appropriate test. Upon the employer's appeal, the court of appeals affirmed the district court's remand to the commissioner.

We conclude the commissioner's award of penalty benefits was not supported by substantial evidence because the underlying workers' compensation claim was fairly debatable as a matter of law under the record before the commissioner. Therefore, we vacate the court of appeals decision, affirm the judgment of the district court in part and reverse in part, and remand the case for entry of a judgment consistent with this opinion.

## I. Background Facts and Proceedings.

On August 1, 2003, the appellee, Angela Blasnitz, filed a petition for arbitration seeking workers' compensation benefits for a shoulder injury she was ultimately found to have sustained on January 17, 2003. Her employer, City of Madrid, Iowa, and its workers' compensation insurer, EMC Insurance Companies, denied her claim, contending she had not sustained a shoulder injury on the date alleged. (We will refer to these parties jointly as the insurer.) An arbitration decision was eventually entered by a deputy workers' compensation commissioner, awarding disability, medical, and penalty benefits.

On intra-agency appeal, the workers' compensation commissioner affirmed, adopting the deputy's decision with some "additional analysis" concerning the penalty benefits issue. Before reviewing the commissioner's analysis of this issue, it is helpful to summarize the pertinent facts found by the commissioner, as well as the relevant documentary evidence and testimony introduced at the hearing.

In January 2003 the claimant was employed as a police officer for the City of Madrid. On January 17, 2003, she was dispatched to a call at the home of Michael and Susan Palmer to investigate a domestic disturbance. The claimant testified at her workers' compensation hearing that she slipped and fell in the Palmer home, striking her right shoulder and elbow. At the time of the incident, the claimant was wearing a remote microphone for her patrol vehicle recording system, and she can be heard to fall on the tape. Her fall was not visible on the tape, however.

The claimant stated in answers to interrogatories that she had immediate pain in her shoulder and elbow. The patrol car tape shows her conducting a vehicle stop after her fall, sometimes using her right arm above her shoulder. She does say "ouch" once while searching the vehicle. The claimant did not record that she sustained an injury when she completed her patrol activity report for her January 17, 2003 shift. The claimant had been injured three times while working for the city before the January 17, 2003 incident, and on each occasion, she had noted her injury in her patrol activity log on the day the injury occurred.

The claimant testified she had a discussion with the police chief the day after her fall regarding an injury to her shoulder. The chief, however, denied he had a conversation with the claimant on January 18 or January 19, as he did not work on either date.

The police chief gave the claimant a three-day suspension on February 19, 2003, for failing to follow an office directive with respect to an unrelated matter. On the final day of her suspension, February 24, 2003, the claimant sought her initial treatment for her shoulder, neck and arm. She reported to her chiropractor on that date that she had her first symptoms after a fall on her right shoulder approximately three weeks earlier. The claimant wrote a note to her employer the next day, February 25, 2003, stating that she fell "at the 10-16" and hurt her back and shoulder. In response to this note, the insurer authorized medical care with a Dr. Kirkland, who the claimant saw on March 19, 2003. The claimant reported to Dr. Kirkland that she slipped and fell on either January 17, 2003, or December 17, 2002, while responding to a call, but according to his records, she really could not remember. Also on March 19, 2003, the claimant reported to Therapeutic Associates that the injury occurred ninety days prior. On March 26, 2003, she told a physical therapist that she injured her shoulder on January 17, 2003, when responding to a domestic-dispute call. She gave the same history to a physician she consulted on May 7, 2003, who determined the claimant had a rotator cuff tear in her right shoulder. The claimant subsequently had two surgeries to repair the tear.

On three occasions in April 2003, the insurer made surveillance videos of the claimant. In one video, she can be seen bridling, leading, and grooming three horses for approximately ninety minutes, using both arms, sometimes above shoulder level. At one point, she appears to briefly shake her right arm and hold her right shoulder. On May 21, 2003, the insurer took a recorded statement from Mr. Palmer, one of the subjects of the claimant's January 17 domestic-disturbance call. Mr. Palmer told the insurer that the claimant fell straight down on

January 17, 2003, and landed on her bottom. The insurer wrote to the claimant on May 22, 2003, denying her claim.

On June 2, 2003, the claimant called Mr. Palmer and asked him to sign a statement for her because "she was having trouble with the workmen's comp." The next day, June 3, 2003, Mr. Palmer gave a second statement to the insurer, stating that on January 17, 2003, "he had turned slightly and he turned back around and claimant had her feet in the air and her back was against the wall." He explained that he "just wasn't thinking right" when he gave his first statement. Eventually, Mr. Palmer's deposition was taken on March 12, 2004. He testified that he did not see the claimant fall on January 17, 2003, but he did offer to help her up after her fall. He further testified she said she was fine, she did not act like she had been injured, and she did not rub her right arm or shoulder. Mr. Palmer also suggested in his deposition that the parties should question his wife about the incident as she was sitting on the couch facing the door where and when the claimant slipped.

The insurer then contacted Mrs. Palmer, who gave a statement on March 17, 2004. Mrs. Palmer stated that she saw the claimant fall and did not recall that the claimant struck her right shoulder or arm in the course of her fall. Mrs. Palmer testified consistently with her statement when her deposition was subsequently taken on May 11, 2004. She testified she saw the claimant fall, but did not see her hit anything. She said the claimant fell straight down on her bottom with her feet straight out in front of her. Mrs. Palmer said her husband asked the claimant if she was okay, and the claimant said she was okay and did not act injured.

In addition to the testimony of the Palmers, the police chief testified at the hearing that the claimant told him in mid-2002 that she

had been kicked in the right arm by her horse. The police chief said he observed a large bruise on her arm at that time. The police chief and another officer also testified they believed the claimant had been untruthful in the past. Finally, the claimant's surgeon stated there are activities involved in caring for and showing horses that could cause a rotator cuff tear.

In affirming the deputy's decision to award penalty benefits, the commissioner stated:

> Not every defense or factual dispute is sufficient to constitute the reasonable or probable cause or excuse as contemplated by section 86.13. Only a very unimaginative mind would be unable to find a shred of evidentiary fact that could be pointed to as a reason to deny compensability of any claim. Eyewitness accounts of the same incident commonly vary. Memories fade. A view of the totality of the evidence is required to determine whether reasonable or probable cause or excuse existed. *Substantial evidence that has a reasonable chance of prevailing is required . . . .*

(Emphasis added.) The commissioner then briefly reviewed the evidence, noting the record "contains some inconsistencies." Notwithstanding these inconsistencies, he concluded,

> Claimant was employed as a peace officer, a position that judges and juries typically consider to be one that brings credibility. . . . When the totality of the facts in this case are considered *and weighed,* I find that it was not reasonable to consider the untimely evidence from Ms. Palmer to be of sufficient import and reliability *to have a reasonable chance of outweighing all the contrary evidence* that supported the compensability of claimant's claim. It cannot be stated better than how the deputy characterized it on page 14 of his decision, "In light of the overwhelming weight of other evidence, Ms. Palmer's statements do not make claimant's claim fairly debatable."

(Emphasis added.)

The insurer sought judicial review of the commissioner's award of penalty benefits, claiming (1) the commissioner had erroneously imposed

a burden on the insurer to show that its position had a reasonable chance of prevailing, and (2) the commissioner's award of penalty benefits was not supported by substantial evidence. *See* Iowa Code § 17A.19(10)(*c*), (*f*). The claimant argued in response that the commissioner's standard was merely a restatement of the fairly debatable test and substantial evidence in the record supported the commissioner's penalty-benefits award. The district court concluded the commissioner had applied an incorrect legal standard and reversed the award of penalty benefits. The court was unwilling, however, to rule as a matter of law that the compensability of the claimant's claim was fairly debatable. Instead, the court decided "it would be more appropriate to remand" the case to the commissioner for reconsideration "in light of the appropriate legal standard." The court observed the commissioner may determine on remand that the issue was fairly debatable or may award penalty benefits in a different amount, and that "decision would then be subject to subsequent judicial review on a substantial evidence standard."

The insurer appealed the district court's ruling on the substantial-evidence issue, and the case was transferred to the court of appeals. That court agreed with the district court, ruling the appropriate relief was to remand the case to the commissioner so he could have an opportunity to consider an award of penalty benefits under the correct test. The insurer filed an application for further review, which we granted. The sole issue on appeal is whether the record before the commissioner provides substantial evidence to support an award of penalty benefits.[1] *See id.* § 17A.19(10)(*f*). Stated another way, we must

---

[1]The claimant does not contend on appeal that it would be inappropriate to address the substantial-evidence issue in view of the commissioner's application of the incorrect legal standard, which appeared to be the concern prompting the district court

decide whether the compensability of the claimant's claim was fairly debatable as a matter of law. *See Garcia v. Naylor Concrete Co.*, 650 N.W.2d 87, 91 (Iowa 2002) ("However, in challenging an agency finding, a party may not succeed merely by showing that the evidence would support a different conclusion than the one that the agency reached. In order to succeed, it must be demonstrated that, as a matter of law, the finding that the agency made was not supported by substantial evidence." (Citation omitted.)).

## II. Standard of Review.

"Under the Iowa Administrative Procedure Act, a reviewing court may reverse the decision of the workers' compensation commissioner if it is unsupported by substantial evidence in the record . . . ." *Univ. of Iowa Hosps. & Clinics v. Waters*, 674 N.W.2d 92, 95 (Iowa 2004) (citing Iowa Code § 17A.19(10) (2001)). "Substantial evidence"

> means the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance.

Iowa Code § 17A.19(10(*f*)(1). "In assessing evidentiary support for the agency's factual determinations, we consider evidence that detracts from the agency's findings, as well as evidence that supports them, giving deference to the credibility determinations of the presiding officer." *Lange v. Iowa Dep't of Revenue*, 710 N.W.2d 242, 247 (Iowa 2006) (citing Iowa Code § 17A.19(10)( *f* )(3)).

---

to remand the case back to the commissioner. Therefore, we proceed directly to a discussion of whether there is substantial evidence in the record to support the award of penalty benefits. *See generally Mosher v. Dep't of Inspections & Appeals*, 671 N.W.2d 501, 514, 518 (Iowa 2003) (concluding (1) agency had incorrectly interpreted the term "dependent adult" as used in governing statute and (2) agency's finding that the nursing home resident was a "dependent adult" was not supported by substantial evidence).

### III. Applicable Law.

Penalty benefits in a workers' compensation case are authorized by section 86.13, which states:

> If a delay in commencement or termination of benefits occurs without reasonable or probable cause or excuse, the workers' compensation commissioner shall award benefits in addition to those benefits payable under this chapter or chapter 85, 85A, or 85B, up to fifty percent of the amount of benefits that were unreasonably delayed or denied.

Iowa Code § 86.13, para. 4. A claimant seeking to recover under this statute must establish "a delay in the commencement of benefits or a termination of benefits." *Keystone Nursing Care Ctr. v. Craddock*, 705 N.W.2d 299, 307 (Iowa 2005). The burden then shifts to the insurer "to prove[] a reasonable cause or excuse" for the delay or denial. *Christensen v. Snap-On Tools Corp.*, 554 N.W.2d 254, 260 (Iowa 1996). "A reasonable cause or excuse exists if either (1) the delay was necessary for the insurer to investigate the claim or (2) the employer had a reasonable basis to contest the employee's entitlement to benefits." *Id.*

The claimant does not argue the insurer took too long to investigate the claim before its May 23, 2003 denial. Rather, the claimant contends the insurer did not have a reasonable basis to contest her entitlement to benefits. In the *Christensen* case, we held the "fairly debatable" standard used in the tort of bad faith denial of insurance claims should be used for purposes of section 86.13 penalty benefits in determining whether a workers' compensation insurer had a reasonable basis to deny a claimant's claim. *Id.*

This court recently stated the following principles with respect to the reasonable-basis element of a bad-faith tort claim:

> A reasonable basis exists for denial of policy benefits if the insured's claim is fairly debatable either on a matter of fact or law. A claim is "fairly debatable" when it is open to

dispute on any logical basis. Stated another way, if reasonable minds can differ on the coverage-determining facts or law, then the claim is fairly debatable.

The fact that the insurer's position is ultimately found to lack merit is not sufficient by itself to establish the first element of a bad faith claim. The focus is on the existence of a debatable issue, not on which party was correct.

Whether a claim is fairly debatable can generally be decided as a matter of law by the court. That is because " 'where an objectively reasonable basis for denial of a claim *actually exists*, the insurer cannot be held liable for bad faith as a matter of law.' " *As one court has explained, "[c]ourts and juries do not weigh the conflicting evidence that was before the insurer; they decide whether evidence existed to justify denial of the claim."*

*Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473-74 (Iowa 2005) (citations omitted) (emphasis added).

### IV. Discussion.

It is apparent the commissioner erroneously weighed the evidence in deciding whether the claimant's claim was fairly debatable. Moreover, the commissioner focused on only one item of evidence—Mrs. Palmer's statement—in evaluating the reasonableness of the insurer's denial. Finally, the commissioner improperly suggested the employer should have considered the claimant to be credible simply because she was employed as a peace officer. Using the proper analysis and considering all the facts before the commissioner that would support the insurer's denial, we conclude the insurer cannot be held liable for penalty benefits as a matter of law.

Several facts and circumstances supported the insurer's position that the claimant did not injure her shoulder in her January 17, 2003 fall, including the following: (1) Mr. Palmer initially stated the claimant fell straight down and landed on her bottom; (2) Mr. Palmer modified his account of this incident only after the claimant called him, and even then, he continued to testify that the claimant said she was not injured

immediately after her fall (in contrast to the claimant's testimony that she felt immediate pain); (3) Mrs. Palmer stated the claimant fell straight down on her bottom; (4) the claimant's surgeon testified that if the claimant fell flat on her bottom and did not hit her arm on anything, the fall would not have caused the injury for which he treated her; (5) the claimant failed to record her injury in her activity log, in contrast to three prior work-related injuries that she noted in her activity logs on the day the injuries occurred[2]; (6) the police chief denied he was told of the claimant's injury the day after it occurred, as claimed by the claimant; (7) the claimant failed to seek medical treatment until five weeks after her fall; (8) the claimant gave inconsistent statements to treatment providers as to the date of her injury; (9) although at the hearing the claimant denied using her right arm above shoulder level to conduct a sobriety test in a stop three hours after her fall, her patrol car video tape shows the claimant using her right arm above shoulder level several times during the stop; (10) the claimant stated to the police chief in mid-2002 that she had been kicked in the right arm by her horse and the police chief observed a large bruise on her arm; (11) the claimant's surgeon testified there are activities involved in caring for and showing horses that could cause a rotator cuff tear; and (12) the police chief and another police officer believed the claimant had been untruthful at times. Only one conclusion can be drawn from the undisputed existence of the foregoing statements, testimony, and records: the insurer had a

---

[2]On February 20, 2002, the claimant noted in her patrol activity log that she twisted her left ankle on large rocks in a parking lot. On August 2, 2002, she noted in her log that she was assaulted by a suspect and subsequently seen at the Boone County Hospital. On November 30, 2002, the claimant recorded in her activity log that she had dropped a clipboard on the top of her left foot, causing it to turn black and blue.

reasonable basis to contend the claimant did not sustain a rotator cuff tear when she fell on January 17, 2003.

The claimant argues that many of the facts shown at the hearing were unknown to the insurer when it denied payment for the claimant's surgery on June 20, 2003, and the facts known by the insurer on that date were not sufficient to render the insurer's denial reasonable. Contrary to the claimant's contention, it is uncontroverted in the record that, by June 20, 2003, the insurer had a statement from Mr. Palmer in which he stated the claimant fell straight down on her bottom, and it had medical records in which the claimant gave inconsistent histories of her injury. These facts made the claimant's claim fairly debatable. Those facts arising later or coming to the attention of the insurer subsequent to June 20, 2003, merely provided further support for the insurer's decision to persist in its denial.

We note the claimant, in discussing the facts pertinent to the validity of her claim for benefits, ignores Mr. Palmer's initial statement, apparently due to the fact that he subsequently gave a second statement more favorable to the claimant. But the insurer is not required to accept the evidence most favorable to the claimant and ignore contradictory evidence. *See Bellville*, 702 N.W.2d at 479 (stating insurer is not required to view the facts in a light most favorable to the claimant); *Gilbert v. USF Holland, Inc.*, 637 N.W.2d 194, 200 (Iowa 2001) (stating employer could reasonably argue later inconsistent version of incident was a fabrication). Here, reasonable persons could discount Mr. Palmer's assertion that he "just wasn't thinking right" when he gave his first statement and disbelieve his second statement, concluding Mr. Palmer changed his account of what happened to assist the claimant in recovering workers' compensation benefits. Similarly, the insurer was

not required to believe the claimant simply because she was a police officer, as implied by the commissioner.

The claimant also relies on the fact the commissioner rejected the insurer's evidence when the commissioner ruled the claimant sustained a shoulder injury on January 17, 2003. But the fact the commissioner was not convinced by the evidence supporting the insurer's denial does not negate the existence of a genuine dispute with respect to whether the claimant's January 2003 fall was the cause of her injury. *Bellville*, 702 N.W.2d at 473 (stating the fact the insurer's position is ultimately found to lack merit will not by itself establish the insurer had no reasonable basis for its denial of benefits); *Gilbert*, 637 N.W.2d at 200 (same).

In view of the facts that created a genuine dispute with respect to the cause of the claimant's rotator cuff tear, we conclude the claimant's claim was fairly debatable as a matter of law. *See id.* at 474 ("[I]f it is undisputed that evidence existed creating a genuine dispute . . . , a court can almost always decide that the claim was fairly debatable as a matter of law."). Consequently, the commissioner's award of penalty benefits was not supported by substantial evidence. *See Gilbert*, 637 N.W.2d at 201 ("In conclusion, we hold as a matter of law there was a reasonable factual dispute as to the manner in which Gilbert's injury occurred. Therefore, there is not substantial evidence in the record to support a finding that the compensability of his injury was not fairly debatable."). The district court should have remanded this case to the commissioner for entry of an order denying penalty benefits.

**V. Disposition.**

The record before the commissioner established that the claimant's entitlement to benefits was fairly debatable as a matter of law. Consequently, there is not substantial evidence to support a finding that

the insurer's denial of that claim was "without reasonable or probable cause or excuse" so as to entitle the claimant to penalty benefits. Because there is not substantial evidence to support the commissioner's award of such benefits, that part of the commissioner's decision must be reversed.

We vacate the court of appeals decision because that court concluded the penalty-benefits issue should be remanded for a ruling by the commissioner. We affirm that part of the district court's decision reversing the commissioner's award of penalty benefits. We reverse that part of the district court judgment remanding the matter to the commissioner for reconsideration of the penalty-benefits claim. Finally, we remand this case to the district court for entry of an order reversing the commissioner's award of penalty benefits and directing the commissioner to deny the claimant's request for penalty benefits.

**DECISION OF COURT OF APPEALS VACATED. DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED.**