882

CITY OF DAVENPORT, Plaintiff–
Appellant/Cross–Appellee,

v.

Dick L. NEWCOMB, Defendant–
Appellee/Cross–Appellant.

No. 11–1035.

Court of Appeals of Iowa.

April 11, 2012.

Craig A. Levien, Peter J. Thill, and Amanda M. Richards of Betty, Neuman & McMahon, P.L.C., Davenport, for appellant/cross-appellee.

Elliott R. McDonald III of McDonald, Woodward & Carlson, P.C., Davenport, for appellee/cross-appellant.

Heard by VOGEL, P.J., and POTTERFIELD and DOYLE, JJ.

VOGEL, P.J.

The City of Davenport appeals from the district court's ruling on judicial review, affirming the award of workers' compensation benefits to former employee, Dick Newcomb. Newcomb cross-appeals the denial of penalty benefits under Iowa Code section 86.13 (2007). We affirm the agen-

cy's refusal to take additional testimony from the City's doctor at a follow-up hearing requested by the deputy commissioner to determine the credibility of the claimant and his wife. We also affirm the agency's denial of penalty benefits as Newcomb's claim was "fairly debatable." We, however, reverse and remand as the agency abused its discretion in denying the City's August 7 motion to compel an independent medical examination with Dr. Chad Abernathey under Iowa Rule of Civil Procedure 1.515, and erred in its interpretation of Iowa Code section 85.39. We decline to rule on the remaining issues that may subsequently be affected by our decision to remand. We therefore affirm in part, reverse in part, and remand with directions.

## I. Background Facts

Dick Newcomb began working for the City of Davenport in October 2002, at the age of fifty-three, as a plant operator at the sewage treatment plant. The injury at issue in this case occurred on Sunday, December 11, 2005, when Newcomb slipped and fell on ice while performing work-related duties. Newcomb's left hip, as well as both arms, hit the ground. He reported the fall to the lead operator and filed a written report. Newcomb did not think it was necessary go to the hospital as he felt a little bruised and shook up, but wanted to wait and see what happened. Newcomb worked the remaining three or four hours of his shift and also worked the second shift on Monday. By Tuesday, Newcomb was experiencing some complications—increased soreness and trouble

getting up and sitting down. Newcomb took four hours off work on Tuesday and went home early. On Wednesday, Newcomb left for a scheduled trip to Florida. During his trip, Newcomb continued to have problems. He later described the pain as being "real sharp pain. It came out of the low back into the buttock, and it went under the back side of the thigh of the leg. And it [came] out the calf, right above the ankle." Newcomb self-medicated, using Flexeril and Vicodin—from an existing prescription he had been given to address other joint and muscle pain.

While Newcomb was in Florida, he called the City's nurse and said he needed to see a City doctor when he returned. Newcomb requested to see Rick Garrels, M.D., with whom he had established a good rapport in previous treatment.[1] On Dr. Garrels's recommendation, Newcomb attended two weeks of physical therapy, but that did not help to relieve the pain. Newcomb was then given two spinal epidurals, one in February and one in March 2006. In May 2006, Newcomb was still experiencing a great deal of pain. Dr. Garrels noted some tenderness in Newcomb's left lower back and advised Newcomb to return if his symptoms increased.

By August 2006, there was still no resolution to the pain and Newcomb was taking eight to ten Vicodin a day to manage his pain. On August 6, 2006, Dr. Garrels placed work restrictions on Newcomb, and Newcomb was then assigned light duty at the fire department. On August 14, 2006,

---

1. Newcomb sustained an injury to his groin and low back areas on September 6, 2004, while working for the City and was referred to Dr. Garrels for treatment. In October 2004, Newcomb was hospitalized for a ruptured gallbladder; medical records indicate some of Newcomb's low back pain may have been caused by the gallbladder problem. Newcomb testified that following removal of

the gallbladder, his low back and groin pain ceased. Newcomb returned to work on November 1, 2004, with no restrictions. At the hearing for this injury, Dr. Garrels also testified he and Newcomb had a good rapport and when asked whether he found Newcomb to be "open and honest" with him, Dr. Garrels replied, "Very much so."

Dr. Garrels determined that Newcomb had reached "maximum medical improvement," noting Newcomb "has had improvement and is back to his baseline." Dr. Garrels placed some permanent work restrictions on Newcomb, "for his pre-existing degenerative disk disease state," prohibiting heavy lifting and repetitive bending. On August 24, 2006, human resources sent Newcomb a letter explaining, "The injury you sustained at work was an aggravation of a personal medical condition," and that Dr. Garrels had determined "that the aggravation has been resolved." The letter further stated that due to the work restrictions, Newcomb would be unable to continue with either his regular duties and his modified duties at the fire department without re-aggravating his "existing personal medical condition." Newcomb was advised, "You should begin to use your personal sick leave to account for your hours."

With the news that any further treatment would not be covered, Newcomb began seeing his family doctor, James King, D.O., in September 2006. Newcomb complained of chronic back pain with left leg radiculopathy. Dr. King referred Newcomb to an orthopedic surgeon, Michael Dolphin, D.O., in October 2006. After examining Newcomb, Dr. Dolphin noted, "Based upon [Newcomb's] history as well as the x-ray and MRI today, it would appear that his degenerative disc disease is not the issue with his present complaint." Dr. Dolphin performed surgery on Newcomb's left leg on December 11, 2006.

Newcomb returned to work for the City in late March 2007 and worked approximately four weeks. A couple weeks into work, Newcomb experienced pain in his left leg, as well as pain in his right buttock that came through the hip and into the right groin area, which then shot down the right knee.

Newcomb was removed from work again and Dr. Dolphin performed another surgery in June 2007. After the second surgery, Newcomb reported positive results on the right side, with much less pain, but the left side remained unchanged. After the second surgery, Newcomb also developed an infection in the wound on the left side, which required yet another surgery. In August 2007, Newcomb suffered a heart attack and underwent surgery to place six stents in his heart vessels.[2]

Despite the corrective surgeries and physical therapy, Newcomb's pain persisted. The only thing that seemed to alleviate Newcomb's pain was taking pain medications, including OxyContin, Vicodin, and Cymbalta. On September 20, 2007, Dr. Dolphin concluded it would be "difficult for me to recommend that [Newcomb] return to work given his degree of discomfort, pain, and immobility." Dr. Dolphin imposed restrictions including: lifting no greater than twenty pounds, no repetitive bending, twisting, pushing, and pulling, and advising Newcomb be able to change position every hour from sitting to standing. The City terminated Newcomb's employment on September 21, 2007.

## II. Proceedings

On November 1, 2007, Newcomb filed a workers' compensation petition alleging an injury to his lower back on December 11, 2005. The City answered on November 8, denying liability. On February 7, 2008, Newcomb amended his original petition to plead the odd-lot doctrine for his disability,

---

2. Newcomb also had stents placed in 2001, of which the City was aware. He had stents placed again in 2008. Dr. King indicated Newcomb's heart condition alone would not prevent him from returning to work for the City.

as well as requesting a determination regarding whether he was entitled to permanent total disability benefits. The City filed an answer to the amended petition on May 16, 2008, in which the City admitted the injury but denied causation. On June 23, 2008, the City moved to compel Newcomb to submit to a follow-up examination with Dr. Garrels, pursuant to Iowa Code section 85.39 or Iowa Rule of Civil Procedure 1.515, as Dr. Garrels had not examined Newcomb since August 6, 2006. Newcomb resisted. On July 14, 2008, Larry P. Walshire, Deputy Workers' Compensation Commissioner, denied the City's motion to compel. On July 23, 2008, the City moved to compel an independent medical examination (IME) with Chad Abernathey, M.D., a neurosurgeon in Cedar Rapids. On July 30, 2008, Walshire denied the motion. On August 7, 2008, the City filed a second, supplemented motion to compel an IME with Dr. Abernathey. This motion was deemed denied under Iowa Administrative Code rule 876–4.24, as it was not granted within twenty days of its filing.[3]

On January 13, 2009, Newcomb's petition came on for arbitration hearing before Deputy Workers' Compensation Commissioner Vicki Seeck. On April 20, 2009, before a ruling was issued, Newcomb's case was reassigned to Deputy Commissioner Walshire. On May 7, 2009, Walshire, after reviewing the record created at the arbitration hearing, determined he needed to make a credibility assessment of Newcomb and his wife, before ruling on the merits, as there was a "significant conflict" between the Newcombs' testimony and Dr. Garrels's reported history of Newcomb's back pain. As such, he ordered a follow-up or credibility hearing, limited to receiving the Newcombs' testimony. On August 17, 2009, the City filed an application for interlocutory appeal, seeking among other things, the testimony of Dr. Garrels be allowed at the credibility hearing. Newcomb resisted and the commissioner denied the City's interlocutory appeal.

On September 10, 2009, Walshire issued an arbitration decision and ordered the City to pay Newcomb permanent total disability benefits, medical expenses listed in the hearing report, and the costs of bringing the action. The City appealed. On October 18, 2010, the commissioner affirmed the arbitration decision. The City then filed a petition for judicial review and Newcomb cross-appealed. On May 31, 2011, the district court affirmed the agency decision, with one exception.[4] The City appeals and Newcomb cross-appeals.

### III. Standard of Review

Judicial review in workers' compensation actions is governed by Iowa Code chapter 17A. *Broadlawns Med. Ctr. v. Sanders,* 792 N.W.2d 302, 306 (Iowa 2010). "A district court acts in an appellate capacity when it exercises its judicial review power." *Neal v. Annett Holdings Inc.,* 814 N.W.2d 512, 518 (Iowa 2012). In our review of the district court's decision, we apply the same standards of chapter 17A to determine whether the conclusions we

---

**3.** Iowa Administrative Code rule 876–4.24 states, in relevant part,

An application for rehearing shall be deemed denied unless the deputy commissioner or workers' compensation commissioner rendering the decision grants the application within 20 days after its filing. For purposes of this rule, *motions* or requests for reconsideration or new trial or retrial or any reexamination of any decision, ruling, or order *shall be treated the same as an application for rehearing.* (Emphasis added.)

**4.** The district court modified the long-term disability payments, which are not at issue on appeal.

reach are the same as those of the district court. *Mycogen Seeds v. Sands,* 686 N.W.2d 457, 464 (Iowa 2004). If they are the same, we affirm; otherwise we reverse. *Id.* The standard of review we apply to the commissioner's decision varies depending on the type of error allegedly committed. *Jacobson Transp. Co. v. Harris,* 778 N.W.2d 192, 196 (Iowa 2010). Because of the varying standards of review, it is essential for counsel to clearly articulate the precise claim of error on appeal. *Meyer v. IBP, Inc.,* 710 N.W.2d 213, 219 (Iowa 2006).

In this appeal there are multiple claims, each requiring a different standard of review. First, the City asserts the agency erred in barring Dr. Garrels from testifying at the credibility hearing. Given the fact the agency is vested with the power to make factual findings, we find the agency is also vested with the power to determine what information is necessary for it to make those findings. We are therefore bound by the agency's decision unless it is "unreasonable, arbitrary, capricious, or an abuse of discretion." Iowa Code § 17A.19(10)(n).

■ The City also asserts the agency improperly denied its motion to compel Newcomb's attendance at an IME conducted by Dr. Abernathey under both Iowa Rule of Civil Procedure 1.515 and Iowa Code section 85.39. We find at the heart of these claims is the assertion (1) the agency wrongly concluded the City failed to meet the requirements for an IME under rule 1.515, and (2) the agency wrongly interpreted section 85.39 as only applying to claims where liability for a workers' compensation injury has been accepted. With respect to the claim under rule 1.515, the agency's ultimate conclusions are challenged, and therefore, the claim challenges the agency's application of law to the facts. *Meyer,* 710 N.W.2d at

219. Our scope of review then is whether "the agency abused its discretion by, for example, employing wholly irrational reasoning or ignoring important and relevant evidence." *Id.* We give some deference to the agency, but less than we give to agency's findings of fact. *Larson Mfg. Co., v. Thorson,* 763 N.W.2d 842, 850 (Iowa 2009).

■ With respect to the claim under section 85.39, when it is alleged an agency erred in interpreting a statute, we look to see if the legislature has clearly vested the authority to interpret the law with the agency. *Xenia Rural Water Dist. v. Vegors,* 786 N.W.2d 250, 252–53 (Iowa 2010). If the agency has been vested with the authority to interpret, we will only reverse if the decision is "irrational, illogical, or wholly unjustifiable." *Id.* at 252. When the agency has not been vested with the authority, we "accord no deference to the interpretation of the commissioner" and are free to substitute our own judgment for the agency's interpretation if we conclude the agency made an error of law. *Neal,* 814 N.W.2d at 519. In this case we find the agency was not vested with the authority to interpret section 85.39, therefore, our review is for correction of errors at law.

The final issue we will address in this case is whether the agency correctly determined Newcomb was not entitled to penalty benefits under section 86.13. Again, this challenge is to the ultimate conclusion made by the agency and is therefore a challenge to the agency's application of law to the facts. As such, we reverse only if the commissioner's application was "irrational, illogical, or wholly unjustifiable." *Thorson,* 763 N.W.2d at 850. We give some deference to the agency, but less than we give to the agency's findings of fact. *Id.*

## IV. Restricting Defense Witness at Follow–Up/Credibility Hearing

█ The City first contends the district court erred in affirming the commissioner's decision to bar a defense witness, Dr. Garrels, from testifying at the credibility hearing requested by Deputy Commissioner Walshire.

The first arbitration hearing was held on January 13, 2009, before Deputy Commissioner Seeck. At this hearing, Dr. Garrels testified Newcomb had chronic lower back pain that pre-dated the December 11, 2005 fall. Newcomb and his wife, Geraldine, both testified Newcomb had no previous lower back pain other than that from a 2004 work injury. Newcomb further testified that the lower back pain terminated after his gallbladder was removed in October 2004. As noted above, before a decision on the first arbitration hearing was issued, Walshire was assigned the case. Walshire set the case for a credibility hearing, because following his review of the records, he determined:

> There appears to be a significant conflict between the history provided by Dr. Garrels of chronic back pain prior to the stipulated work injury and the testimony of claimant and his spouse that he had few problems before this work injury. Consequently, a credibility assessment of the claimant and his spouse will likely be necessary. As I was not present during the hearing, I am not comfortable in making an assessment of such credibility without the benefit of observing the demeanor of these witnesses during critical aspects of their direct and cross examinations.... This second hearing will be brief and will only involve the claimant and his wife, unless a party wishes me to observe other past witnesses where credibility may be at issue. New evidence will not [be] received at this hearing and no expert shall testify for a second time.

The City cites Iowa Code section 17A.15(2), which provides in relevant part:

> Findings of fact shall be prepared by the officer presiding at the reception of the evidence in a contested case unless the officer becomes unavailable to the agency. *If the officer is unavailable, the findings of fact may be prepared by another person qualified to be a presiding officer who has read the record, unless demeanor of witnesses is a substantial factor.* If demeanor is a substantial factor and the presiding officer is unavailable, the portions of the hearing involving demeanor shall be heard again or the case shall be dismissed.

(Emphasis added.) While the City urges that Dr. Garrels should have also been allowed to testify at the credibility hearing, we disagree. Deputy Commissioner Walshire found a discrepancy between "the history provided by Dr. Garrels" and the "testimony of claimant and his spouse."

█ It is the commissioner's "duty as the trier of fact to determine the credibility of witnesses." *Arndt v. City of Le Claire*, 728 N.W.2d 389, 395 (Iowa 2007). Under section 17A.15(2), the commissioner need only rehear the portions of the hearing involving demeanor if demeanor is a "substantial factor." *See* Iowa Code § 17A.15 (stating when rehearing is necessary). Upon his review of the record, Walshire determined it would be necessary for him to make a credibility assessment of Newcomb and his wife. Walshire did not articulate such a credibility determination was necessary regarding Dr. Garrels. In his August 5, 2009 ruling, Walshire determined an assessment of the Newcombs' credibility was critical because the "defendants have raised their credibility as an issue in this case." Walshire did not find additional testimony by Dr. Garrels was

necessary, as "[no] party has raised the issue of the truthfulness of any doctor who previously testified in this case."

Because factual determinations are "clearly vested by a provision of law in the discretion of the agency," we find it was within Walshire's discretion to determine whose demeanor required reassessment at a credibility hearing. *Thorson*, 763 N.W.2d at 850. At the time the credibility hearing was ordered, Walshire had exhibits including medical records from Dr. Garrels and a transcript of Dr. Garrels's testimony on which to base his decision. He determined that rehearing testimony from Dr. Garrels was unnecessary, as no one challenged his credibility, which was well within his discretion. *See Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 850 (Iowa 2011) (noting that "the commissioner, as fact finder, is responsible for determining the weight to be given to expert testimony"). The district court noted that in the arbitration decision Walshire stated:

> A request from defendant that I re-hear the testimony of Dr. Garrels was denied as I did not believe claimant was asserting that Dr. Garrels was lying. Claimant was only asserting that he was mistaken. I also felt that Dr. Garrels should not be allowed to bring in new facts or evidence to shore up his prior testimony.... Given the rather massive record in this case and 221 page transcript, both parties were given ample time to present their respective cases.

Based on our review of the record, we agree with the district court that Walshire acted within his discretion in determining what testimony he needed to resolve a dispute in the testimony already received, and in concluding Dr. Garrels's testimony was not required in the credibility hearing, as his credibility was not in question. We therefore affirm as to this issue.

## V. Independent Medical Examination

The City next asserts the district court erred in affirming the commissioner's denial of its motion requesting that Newcomb be examined by Dr. Abernathey, under both Iowa Rule of Civil Procedure 1.515 and Iowa Code section 85.39.[5] The City alleges such a decision allowed Newcomb to "have an unfair advantage at the time of the arbitration hearing and was clearly irrational, illogical, and wholly unjustifiable under Iowa law."

Because the City challenges the agency's ultimate conclusion with respect to whether good cause was shown for an IME under Iowa Rule of Civil Procedure 1.515, the City's claim challenges the agency's application of law to facts, and therefore, must be reviewed under an abuse of discretion standard. *See Meyer*, 710 N.W.2d at 219. Our review of the City's challenge to the agency's failure to grant an IME under Iowa Code section 85.39, on the other hand, is for correction of errors at law as the City contends the agency wrongly interpreted this statute. *See Neal*, 814 N.W.2d at 518.

### A. Application of Iowa Rule of Civil Procedure 1.515

We begin by noting that Iowa Rule of Civil Procedure 1.515 is applicable to workers' compensation proceedings. *See* Iowa Admin.Code r. 876–4.18.

 Iowa Rule of Civil Procedure 1.515 states:

> When the mental or physical condition ... of a party, or of a person in the custody or under the legal control of a

---

5. The first motion to compel an independent medical examination with Dr. Abernathey was filed July 23, 2008. A second, supplemented motion was filed on August 7, 2008.

party, *is in controversy,* the court in which the action is pending may order the party to submit to a physical or mental examination by a health care practitioner or to produce for examination the person in the party's custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of examination and the person or persons by whom it is to be made.

(Emphasis added.) "An independent medical examination is not available as a matter of right, but is permitted only within the discretion of the trial court." *Ragan v. Petersen,* 569 N.W.2d 390, 393 (Iowa Ct. App.1997).

> Two elements must be established to warrant an order for examination [under rule 1.515]. First, the mental or physical condition of the party must be "in controversy." Second, when the condition is in controversy, "good cause" for the examination must be shown.

*McQuillen v. City of Sioux City,* 306 N.W.2d 789, 790–91 (Iowa 1981). "These two requirements are not merely formalities and are not satisfied by mere conclusory allegations or by mere relevance to the case." *Ragan,* 569 N.W.2d at 393. On July 30, 2008, Walshire denied the City's July 23 motion to compel, stating:

> Defendant seeks a medical evaluation by another physician. I previously denied a motion for a similar evaluation by a physician who previously evaluated claimant on grounds that the only authority for such an evaluation absent an admission of liability for the condition to be evaluated was Iowa Rule of Civil Procedure 1.515. I found that rule inapplicable because defendants failed to set forth the manner, conditions, and scope

of the examination as required by the rule and defendants failed to explain why a second evaluation was necessary, as there was no allegation that the condition had, in any way, changed. The second evaluation was only in response to a causation opinion by a physician retained by claimant. The rule only contemplates a single evaluation absent some showing of necessity. Unfortunately, defendant's application in this matter is similarly flawed on the same grounds.

The district court found that based upon the record, the agency did not improperly exercise its discretion in denying the first motion for an independent medical examination by Dr. Abernathey. We agree.

■ Where an Iowa rule of civil procedure is patterned after a federal rule, interpretations of the federal rule are persuasive. *Sherwood v. Nissen,* 179 N.W.2d 336, 339 (Iowa 1970). Iowa Rule of Civil Procedure 1.515 is patterned after Federal Rule of Civil Procedure 35. *Compare* Iowa R. Civ. P. 1.515 *with* Fed.R.Civ.P. 35. In *Schlagenhauf v. Holder,* the United States Supreme Court was charged with interpreting Federal Rule of Civil Procedure 35. 379 U.S. 104, 112–13, 85 S.Ct. 234, 239–40, 13 L.Ed.2d 152, 160 (1964). The petitioner, a bus driver in an action where passengers were seeking compensation for injuries suffered, contended Rule 35 should not apply to defendants; the Court, however, recognized that "[d]iscovery is not a one-way proposition. Issues cannot be resolved by a doctrine favoring one class of litigants over another." *Id.* at 113, 85 S.Ct. at 240, 13 L.Ed.2d at 161 (internal citation omitted). Schlagenhauf further challenged a request that he submit to mental and physical examinations by specialists in internal medicine, ophthalmology, neurology, and psychiatry. *Id.* at 107, 85 S.Ct. at 237, 13 L.Ed.2d at 157.

With respect to the "in controversy" and "good cause" requirements that are imperative to Rule 35, the Court explained,

> They are not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for orders of each particular examination. Obviously, what may be good cause for one type of examination may not be so for another.

*Id.* at 118, 85 S.Ct. at 242–43, 13 L.Ed.2d at 164. It has further been noted that courts have not been willing "to order batteries of examinations by different specialists unless each was supported by good cause." *Peters v. Nelson*, 153 F.R.D. 635, 638 (N.D.Iowa 1994).

The City alleged in its July 23 motion to compel that it "ha[d] a right to have a similarly-qualified neurosurgeon respond to . . . and offer independent opinions from those of Dr. Dolphin." The City had no *right* to compel examination by a neurosurgeon just because Newcomb had been examined by a neurosurgeon. *See McQuillen*, 306 N.W.2d at 790 (stating an order for a medical examination under what is now rule 1.515 is discretionary); *see, e.g., Schlagenhauf*, 379 U.S. at 120–21, 85 S.Ct. at 244, 13 L.Ed.2d at 165 (holding that a request for four separate independent medical exams performed by specialists was not warranted where nothing in the pleadings or affidavit supported broad examinations by specialists). Instead, the City needed to make the requisite showing under rule 1.515, which includes establishing "good cause" to seek the additional examination, and requiring the requesting party to specify the time, place, manner, conditions, and scope of such examination. We agree with Walshire's conclusion that the City failed to set forth the "manner, conditions, and scope of the examination" and therefore did not fully comply with the requirements under the rule in its July 23 motion.

On August 7, the City filed a second motion to compel an IME with Dr. Abernathey. In this second motion, the City set forth the manner, conditions, and scope of examination, as well as its allegations of good cause. With respect to good cause, the City stated,

> In addition, there is good cause for this examination. The Claimant has obtained an independent medical examination from Dr. Milas and opinions from Dr. Dolphin in support of his claim. Dr. Milas and Dr. Dolphin have rendered opinions regarding causation and nature and extent of the Claimant's alleged injury. Defendant requests this examination to obtain its own independent medical opinions and have a similarly-qualified neurosurgeon respond to the opinions of Dr. Milas and Dr. Dolphin.
>
> . . . **This will be the first independent medical examination of the Claimant at the Defendant's request.** Although Defendant has made two prior requests for independent medical examinations of the Claimant, those requests have been denied and, therefore, there has been no independent medical examination performed at the Defendant's request to date.
>
> . . . The examination is necessary for Defendant to properly defend the matter. . . . It is correct that Defendant is denying liability for this claim. However, Defendant has the right to defend this case on the merits in addition to the denial of liability. In order to properly defend on the merits, Defendant has the right to obtain an independent medical

examination of the Claimant in accordance with Iowa R. Civ. P. 1.515.

 This second motion was denied by virtue of Iowa Administrative Code rule 876–4.24 when it was not granted within twenty days after filing. Thus the agency abused its discretion by failing to exercise its discretion to decide whether good cause had been shown by the City in this second motion. *See IBP, Inc. v. Al–Gharib*, 604 N.W.2d 621, 631 (Iowa 2000). When there is error based on an agency's failure to exercise discretion, the remedy is to reverse and remand to the agency for consideration. *See id.* at 631–32 (affirming the district court's decision to reverse and remand where a blanket exclusion of opinion testimony amounted to an agency's failure to exercise discretion); *see also GreatAmerica Leasing Corp. v. Cool Comfort Air Conditioning & Refrigeration, Inc.*, 691 N.W.2d 730, 733 (Iowa 2005) (reversing and remanding where district court abused its discretion because it "fail[ed] to exercise any discretion"). While we would typically remand to the agency for consideration, our disposition of this issue under Iowa Code section 85.39, as provided below, makes it unnecessary to remand the issue pursuant to Iowa Rule of Civil Procedure 1.515.

### B. Iowa Code § 85.39

 The City further contends the district court erred in holding the City was not entitled to an IME under Iowa Code section 85.39. This code section provides, in pertinent part:

> After an injury, the employee, if requested by the employer, shall submit for examination at some reasonable time and place and as often as reasonably requested, to a physician or physicians authorized to practice under the laws of this state or another state, without cost to the employee; but if the employee requests, the employee, at the employee's own cost, is entitled to have a physician or physicians of the employee's own selection present to participate in the examination. If an employee is required to leave work for which the employee is being paid wages to attend the requested examination, the employee shall be compensated at the employee's regular rate for the time the employee is required to leave work, and the employee shall be furnished transportation to and from the place of examination, or the employer may elect to pay the employee the reasonable cost of the transportation. The refusal of the employee to submit to the examination shall suspend the employee's right to any compensation for the period of the refusal. Compensation shall not be payable for the period of suspension.

Iowa Code § 85.39. Newcomb contends, and the agency found, the City was not entitled to an IME under section 85.39 because the City denied liability.

 Our supreme court has held that *reimbursement* for a medical examination under Iowa Code section 85.39 cannot be ordered until liability for an injury has been established. *McSpadden v. Big Ben Coal Co.*, 288 N.W.2d 181, 194 (Iowa 1980). In addition, the court has held an employer's "right to control treatment ... is lost if the employer disputes liability." *Winnebago Indus., Inc. v. Haverly*, 727 N.W.2d 567, 575 (Iowa 2006). Although an admission of liability affects the employer's right to control treatment and an employee's ability to receive compensation for an employee-requested IME, we do not find a denial of liability wholly precludes an IME under Iowa Code section 85.39. In fact, if the purpose of the IME is to assist in determining causation, an admission of liability should not be a prerequisite to such an examination. *See Daugherty v. Scan-*

*dia Coal Co.*, 206 Iowa 120, 124, 219 N.W. 65, 67 (1928) (recognizing the purpose of what is now Iowa Code section 85.39 is "doubtless for the purpose of enabling the employer to ascertain the extent and character of the injury").

As the City indicated, Dr. Garrels was Newcomb's treating doctor and an IME was never performed by Dr. Garrels or any other medical professional. Contrary to the ruling of the district court and the commissioner, we find the City's request was reasonable under the circumstances. In addition, the City further clarified the difficult position employers are put in if the only manner in which they can rebut an employee's claims is through a doctor's review of medical records. The City explained that as the deputy commissioner is able to make credibility findings as to expert opinions, limiting the employer to a doctor's written report based only on a records review, and not an actual examination, puts the employer at a disadvantage. That argument finds support in the language of the deputy commissioner who found, "the views of [Doctors] Dolphin, Milas, King and Hughes, more convincing than those of Dr. Garrels for several reasons," including that Dr. Garrels was "not a specialist in orthopedics or neurosurgery." The result of the deputy commissioner denying an IME by the specialist, Dr. Abernathey, was therefore used against the City in concluding the City's medical evidence was inferior to the expert medical testimony presented by Newcomb. That defeats the notion of "substantial justice." *See Ragan*, 569 N.W.2d at 394 ("The concept of 'substantial justice' favors a trial which allows both parties an opportunity *to fully and fairly develop their* claims and defenses without prejudice to the other party."). This put Newcomb at

an unfair advantage as the City could not fully and fairly develop and defend this claim.

The district court erred in concluding Iowa Code section 85.39 was only applicable where liability for an injury has been accepted. We reverse its decision and remand to the agency with directions to permit Dr. Abernathey[6] to perform an IME on Newcomb pursuant to Iowa Code section 85.39.

## VI. Penalty Benefits

The only issue raised by Newcomb on cross-appeal is that the district court erred in affirming the denial of penalty benefits under Iowa Code section 86.13. Penalty benefits are authorized in workers' compensation cases under section 86.13, which reads, in pertinent part:

> If a delay in commencement or termination of benefits occurs without reasonable or probable cause or excuse, the workers' compensation commissioner shall award benefits in addition to those benefits payable under this chapter, or chapter 85, 85A, or 85B, up to fifty percent of the amount of benefits that were unreasonably delayed or denied.

*See also City of Madrid v. Blasnitz*, 742 N.W.2d 77, 81 (Iowa 2007) (citing Iowa Code section 86.13). This code section "provides a statutory remedy for unreasonably delayed or withheld workers' compensation benefits." *Christensen v. Snap-On Tools Corp.*, 554 N.W.2d 254, 260 (Iowa 1996). The claimant must first establish there was a delay in the commencement or termination of benefits. *Blasnitz*, 742 N.W.2d at 81. The burden then shifts to the insurer—or in this case the City—to prove a reasonable cause or excuse for the delay or denial. *Id.*

---

**6.** Should Dr. Abernathey be unavailable, the City is still granted its request for an IME performed by another qualified neurosurgeon of its choice.

A reasonable cause or excuse exists if either (1) the delay was necessary for the insurer to investigate the claim or (2) the employer had a reasonable basis to contest the employee's entitlement to benefits. A "reasonable basis" for denial of the claim exists if the claim is "fairly debatable."

*Christensen,* 554 N.W.2d at 260.

Newcomb contends the City did not have a reasonable basis to deny disability benefits. In *Christensen,* our supreme court determined the "fairly debatable" standard that applies to the tort of bad-faith denial of insurance claims should be utilized in determining whether penalty benefits are owed under Iowa Code section 86.13. *Blasnitz,* 742 N.W.2d at 81–82. In analyzing the reasonable-basis element, our supreme court recognized,

> The fact that the insurer's position is ultimately found to lack merit is not sufficient by itself to establish the first element of a bad faith claim. The focus is on the existence of a debatable issue, not on which party was correct.

> Whether a claim is fairly debatable can generally be decided as a matter of law by the court. That is because where an objectively reasonable basis for denial of a claim actually exists, the insurer cannot be held liable for bad faith as a matter of law.

*Id.* at 82 (citing *Bellville v. Farm Bureau Mut. Ins. Co.,* 702 N.W.2d 468, 473–74 (Iowa 2005)) (internal quotation marks omitted).

The deputy commissioner held that even if the City's decision to withhold benefits was "imprudent" because it was based on the opinion of Dr. Garrels, which was discredited by more highly trained specialists, such action can still be "fairly debatable" as a matter of law. Both the commissioner and district court affirmed.

 We agree with the agency that as a matter of law, the City proved a reasonable basis existed to deny Newcomb's entitlement to benefits. The City's doctor, Dr. Garrels, concluded on August 14, 2006, Newcomb had returned to baseline and had achieved maximum medical improvement. Based on this assessment, Newcomb's claim was "fairly debatable," and a reasonable basis existed for the City's denial of the claim. Moreover, our remand directing Newcomb be seen by Dr. Abernathey for an IME does not change the outcome of this issue, because our inquiry focuses on the time of the initial denial, as well as whether, at some later date, the City "became aware there was no reasonable basis to continue denying [Newcomb's] claim." *McIlravy v. N. River Ins. Co.,* 653 N.W.2d 323, 331 (Iowa 2002). Because the City's initial denial was based on Dr. Garrels's August 14, 2006 opinion that Newcomb had returned to baseline, and at no later date did the City become aware there was not a reasonable basis to continue denying Newcomb's claim, we conclude that Dr. Abernathey's opinion—whatever it may be in the future—will not in any way affect our evaluation of the penalty benefits request. We therefore affirm as to the denial of penalty benefits.

## VII. Additional Issues Raised on Appeal

In addition to the issues already decided, the City raised issues relating to causation, medical expenses, and permanent and total disability. As each of these remaining issues could be affected by our decision to remand to the agency for the IME and further proceedings, we decline to rule on these issues at this time.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**